SMITH, Respondent, v. GRAND LODGE A. O. U. W. OF MISSOURI; ALMA S. DODSON, MINNIE FOWLER, and J. I. FOWLER, Administrator of Estate of MARY A. SMITH, Appellants.

St. Louis Court of Appeals, April 2, 1907.

1. **EQUITY: Bill of Interpleader: Doubtful Claims.** A bill of interpleader can not be maintained against one of several claimants who is shown by the bill to have no interest whatever in the fund.

2. ———: ———: ———: **When Remedy Applies.** But where several claimants of a fund have already brought their several suits for the fund against the holder of the same, the latter is not bound to exercise any judgment in the matter as to who is entitled to the fund, but is permitted to discharge himself by invoking the aid of the court by his bill of interpleader which he may bring in the form of an answer and cross-bill to one of the suits compelling the other plaintiffs to come into the same suit and interplead.

3. ———: ———: ———: **Law and Fact.** It is not required that the stakeholder shall be doubtful on question of fact as to which claimant is entitled to the fund; if the doubt arises from a question either of law or fact, the bill of interpleader may be maintained.

4. ———: ———: **Inviting Claimants to Sue.** Where a party in possession of a fund invited and induced one of several claimants of a fund to bring suit in order to determine the rights of such claimant, the holder of the fund could not afterwards bring a bill of interpleader in another form to determine the respective rights of the claimants without putting the claimant so invited to sue *in statu quo.*

5. ———: ———: **Attempt of Interpleader to Compromise Claims.** The fact that the stakeholder, after several suits were instituted by the claimants for the fund, attempted to effect a compromise between them, did not forfeit the right of the stakeholder to entertain a bill of interpleader.

6. ———: ———: **Tender of Fund.** It is not necessary for a party filing a bill of interpleader against several claimants for a fund in his hands to deposit the fund in court; it is sufficient to tender it in the bill and be ready to pay the fund as ordered by the court.

7. ———: ———: **Identity of Debt.** Where an insurance association filed a bill of interpleader against several claimants for the proceeds of a benefit certificate, who had brought suit and one of whom claimed a sum in excess of the amount in the interpleader's hands, the bill would not lie because it did not dispose of the entire controversy.

8. ———: ———:' ———: **Amendment.** But the interpleader might amend so as to cover the claim as presented.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

REVERSED AND REMANDED.

*Harlan, Reis & Wagner* and *Campbell & Ellison* for administrator, appellant.

There is no equity in the cross-bill of interpleader, filed by the Grand Lodge. "In order to justify the sustentation as such, a bill of interpleader should show that there is some doubt in point of fact, to which of the rival claimants the admitted debt or duty belongs. It should show also a color of right derived from a common source in the respective claimants, but it should not show a clear title in either against the other." Sullivan v. Knight, 73 Mo. App. 45; Funk v. Avery, 84 Mo. App.

494. The beneficiary, Mary A. Smith, the wife of the member, died before the member, and these facts are admitted both by the bill and answer. Then if the Grand Lodge is what it asserts itself to be, a fraternal association, then said beneficiary having died before the member, had no vested interest and none could pass to her representative. Ben. Assn. v. Bunch, 109 Mo. 579.

*F. H. Bacon* for respondent, Grand Lodge A. O. U. W.

(1) The authorities governing proceedings of this kind are reviewed in the recent case of Supreme Council of the Legion of Honor v. Palmer, 107 Mo. App. 157, 80 S. W. 699, where this court sustained the bill, although, after suit was begun, one of the claimants filed a disclaimer. Woodmen of the World v. Wood, 100 Mo. App. 655, 75 S. W. 377; Crane v. McDonald, 118 N. Y. 648. (2) It is immaterial that the claim of the administrator is claimed to be unfounded because he had brought a suit and was pressing it; and, although the claim might never be established, yet it was not improbable that a judgment could have been rendered, and thus this defendant would have been exposed to the danger of having two judgments rendered for one debt. Langston v. Boyleston, 2 Ves. Jr. 109, 110; Hamilton v. Marks, 5 DeG. & S. 638, 643; Manley v. Robinson, L. R. 4 Ch. 347.

STATEMENT.—The appeal is from a judgment on the pleadings, whereby a cross-bill of interpleader, filed by the Grand Lodge A. O. U. W. was sustained and the appellant administrator was ordered to interplead with others for the fund in controversy, which fund the Grand Lodge was directed to pay into the registry of the court and discharged with its costs, attorney's fee, etc., from further responsibility with respect thereto. The facts out of which the controversy arose are some-

what involved. In order, therefore, to elucidate the matter, we will state them in extenso.

About February 6, 1886, Phillip M. Smith, now deceased, became associated with the A. O. U. W. through its subordinate lodge at Kirksville, Missouri, as a result of which association, he received therefrom its benefit certificate, by the provisions whereof said Order agreed to pay, on certain contingencies therein named, $2,000 to his then wife, Mary A. Smith, beneficiary, in event of his prior death. Said Mary A. Smith died October 26, 1892. The insured, Phillip M. Smith, thereafter intermarried with the plaintiff in this suit, and on May 17, 1904, departed this life without having made any other or further designation of a beneficiary under said certificate of insurance. After his death, plaintiff Laura S. Smith, asserted a claim to the insurance mentioned as his widow, and, at the same time, Mrs. Minnie Fowler and Mrs. Alma Dodson, married daughters of the said Phillip M. Smith, by his prior wife, asserted a claim to the same fund, apparently under an alleged agreement with their father, whereby they were to pay the assessments on the certificate and at his death, receive the benefit. About the same time, appellant J. I. Fowler, qualified as administrator of Mary A. Smith, deceased, asserted a claim to the same fund and it seems, $21.50 more than the Grand Lodge admitted to be due on the certificate. The administrator predicated his claim upon the theory that the Grand Lodge is an old line insurance company. In view of these claims asserted, as they were by the several parties, the Grand Lodge declined to take any affirmative action whatever toward the liquidation of the outstanding certificate and therefore, on August 12, 1902, plaintiff widow Laura S. Smith, instituted this suit in the circuit court of the city of St. Louis on said certificate against the Grand Lodge for the sum of $2,000. Her petition avers that the Grand Lodge is a fraternal association, organized

and existing under the laws of Missouri; that she was the wife of Phillip M. Smith, and is now his widow; his death, etc., that in February, 1886, her said husband became a member of the Order and received a certificate from it whereby it promised to pay to his then wife, Mary A. Smith, $2,000 upon his prior death, etc.; that the benefit certificate is not in plaintiff's possession or control and therefore she is unable to file the same with the petition; that the said Mary A. Smith died October 26, 1892; that said Mary A. Smith was, at the time of the issuance of the certificate and at her death, the wife of the insured, etc.; that it was at all times provided in the by-laws of the Order, which were part of the contract, in the event of the death of all the beneficiaries designated by the member, before the death of the member insured and such insured had made no other or further disposition thereof, as provided by the laws of the Order, the benefit should be paid to the widow, unless the member should leave surviving him a wife and minor children of a marriage prior to that of such wife, in which case the benefit should be paid, one-third to such surviving widow and two-thirds thereof to the minor children; that Phillip M. Smith, in his lifetime, complied with all the by-laws, etc., of the order and died while in good standing, leaving surviving him no minor child or children by a prior marriage; that after his death, she had fully performed all conditions as to notice, proof of death, etc., and that such Grand Lodge refused to pay her the said $2,000 or any part of the same, for the reason that the benefit was claimed by Alma S. Dodson and Minnie Fowler, both being adult and married daughters of her said husband; wherefore she prays judgment, etc.

On September 5, 1904, the plaintiff J. I. Fowler, administrator, filed his suit in the circuit court of Adair county on the same cause of action against the Grand Lodge and on September 18, 1904, the two daughters,

Alma S. Dodson and Minnie Fowler, instituted their joint suit in the circuit court of Adair county against the Grand Lodge, on the same cause of action. The Grand Lodge filed an answer and cross-bill of interpleader in the suit of plaintiff widow. Later it filed its supplemental bill in the cause setting up the essential facts and prayed an injunction against said administrator and Alma S. Dodson and Minnie Fowler, restraining them from further prosecution of the said suits in Adair county during the pendency of the interpleader proceedings. To the answer and cross-bill, a demurrer was interposed and sustained, and thereafter the said Grand Lodge, by leave of court, filed its amended answer and cross-bill of interpleader in said case which, omitting caption is as follows:

"Now comes the said defendant, Grand Lodge, Ancient Order of United Workmen of Missouri, and for its separate amended answer to plaintiff's petition, and by leave of court, admits that it issued the benefit certificate referred to in plaintiff's petition.

"And for further amended answer to plaintiff's petition, this defendant denies each and every allegation therein contained.

"And for further amended answer to plaintiff's petition, and by way of amended cross-petition herein, defendant states as follows, to-wit:

"1.    This defendant is, and was at the times hereinafter stated, a corporation duly incorporated May 11, 1882, under the provision of article X of chapter XXI of the Revised Statutes of the State of Missouri of 1879, entitled "Benevolent, Religious, Scientific, Educational and Miscellaneous Associations," and has ever since been doing business in Missouri as such corporation and under the various statutes of the State of Missouri relating to such corporations.

"2.    That this defendant, at all the times hereinafter stated, was the legal entity and governing body

of a fraternal and charitable association, or order, known as the 'Ancient Order of United Workmen,' which such order is composed of a Grand Lodge and numerous local or subordinate lodges, one of which was and is Milton Lodge No. 103, located at Kirksville in this State. One of the objects of said order is to pay to the legally designated beneficiaries of a member, the sum of two thousand dollars or less, as may have been agreed upon, provided the said member, at the time of his said death, shall have complied with all the laws, rules, and regulations of said order, and be a member in good standing thereof.

"3. That this defendant at all times hereinafter stated, had the power to enact and did enact laws, rules and regulations for the government of said order; that heretofore, to-wit; on the 6th day of February, 1886, said laws provided as follows, to-wit:

"'ARTICLE 6.

" 'Section 1. Who entitled to the $2,000.—Upon the death of a M. W. degree member, in good standing of a Subordinate Lodge of the Order, under the jurisdiction of this Grand Lodge of the Ancient Order of United Workmen, such person or persons as said member may have directed, while living, shall be entitled to receive of the Beneficiary Fund of the Order the sum of two thousand dollars; *provided,* said member shall have complied in all particulars with all the laws, requirements and regulations of the order, and with the following conditions:

" 'Section 2. Form of application.—Each applicant for membership in this order shall make an application for the rights, privileges and benefits of the order, in substance as follows, which shall be attested by the Recorder of the Subordinate Lodge, with the seal attached:

*" 'Form of Application.*

" 'I, . . . . . . . . . . . . ., having made application for the M. W. degree in . . . . . . . . . . . . Lodge No. . . . . . ., Ancient Order of United Workmen, State of Missouri, do hereby agree that compliance on my part with all the laws, requirements and regulations which are or may be enacted by said order, is the express condition upon which I am to be entitled to participate in the Beneficiary Fund, and have and enjoy all the benefits and privileges of said order.

" 'I certify that the answers made by me to the questions propounded by the Medical Examiner of this lodge, which are attached to this application and form a part thereof, are true, and if it should hereafter appear that I have made false statements in any particular, or may have become a habitual drunkard, or I shall hereafter engage in the business of dramshop keeper or bartender, or my death be caused directly by the use of intoxicating liquors, notwithstanding I may in the meantime pay all my regular assessments, it is herein agreed, upon my part, that said false statement and action shall render null and void forever my Beneficiary Certificate, to be hereafter issued upon the basis of this agreement and the Medical Examiner's report attached to this application.

" 'I further agree that the certificate to be issued hereon, shall have no binding force whatever until I shall have taken the M. W. degree of said order, and until my medical examination has been approved by the Grand Medical Examiner.

" 'I hereby authorize and direct that the amount to which I may be entitled of said Beneficiary Fund, shall, at my death, be paid to . . . . . . . . . . . . . . . . . . . . . .

(Seal)    . . . . . . . . . . . . . . . . .Applicant.

Attest: . . . . . . . . . . . . . . . . ., Recorder.

" 'Section 4.   Form of Certificate.—The Grand Lodge shall issue; or cause to be issued, all certificates

of the Beneficiary Fund, which certificates shall be in substance, as follows:

" 'BENEFICIARY FUND.

" '*Ancient Order of United Workmen.*

No. ...... $ .........:

" 'This certificate issued by authority of the Supreme Lodge, Ancient Order of United Workmen, witnesseth: That Brother ...................., a M. W. degree member of .........., Lodge No. ...... of said order, located at .............., in the State of Missouri, is entitled to all rights and privileges of membership in the Ancient Order of United Workmen, and to participate in the Beneficiary Fund of the order to the amount of two thousand dollars, which sum shall at his death be paid to ....................

" 'This certificate is issued upon the express condition that said .............. shall, in every particular, while a member of said order, comply with all the laws, rules and requirements thereof.

" 'In witness thereof the Grand Lodge, of Missouri, has caused to be signed by its Grand Master Workman and Grand Recorder, and the seal thereon to be attached, this .... day of ..........., 18....
(Seal of Grand Lodge.)

.............G. M. W.

.............., Recorder.

" 'We, the undersigned M. W. and Recorder of ............ Lodge No. ......, do hereby countersign and attach the seal of this lodge hereto, rendering this certificate valid and in full this day .......... day of .............., 18......

.............., M. W.

(Seal Subordinate Lodge.)
.............., Recorder.

" 'Section 16.   Change of Beneficiary.—Any member holding a beneficiary certificate, desiring at any time to make a new direction as to its payment, may do so by authorizing such change in writing on the back of this certificate in the form prescribed, attested by the Recorder, with the seal of the lodge attached, and by the payment to the Grand Lodge of the sum of fifty cents, but no change or direction shall be valid or have any binding force or effect until such change shall have been reported to the Grand Recorder, the old certificate, if practicable, filed with him, and a new beneficiary Certificate issued thereon, and said new certificate shall be numbered the same as the old certificate; *provided,* however, should it be impracticable for the Recorder to witness the change desired by the Brother, attestation may be made by a notary public or an officer of a court of record, seal to be attached in attest.'

"4.   That afterwards, at a session of said Grand Lodge held in the month of February, 1886, section 16 aforesaid, was amended by the addition thereto of the following provision:

" 'If one or more of the beneficiaries shall die during the lifetime of the member, the surviving benficiary or beneficiaries shall be entitled to the benefit equally, unless otherwise provided in the certificate, and if all the beneficiaries shall die during the lifetime of the member, and he shall make no further direction, the benefit shall be paid to his heirs at law, and if there be none such then the benefit shall revert to the Beneficiary Fund of the Grand Lodge.'

"5.   That heretofore, to-wit: at a session of the said Grand Lodge, held in the month of February, 1900, the said last provision, to-wit: the amendment of 1886, was amended so as to provide that, if all the beneficiaries designated by the member shall die in his lifetime, and he should make no other or further disposition thereof, · as provided by the laws of said order, the benefit shall be

paid to the widow, unless the member should leave surviving him a wife or a minor child or children by a marriage prior to that with such wife; in which case the benefit should be paid, one-third to such wife and two-thirds to the minor children thereof equally.

"6.    That heretofore, to-wit: on or about the 1st day of February, 1886, one Phillip M. Smith made application for membership in this defendant's said order; and to said Milton Lodge No. 103, in the form prescribed in the law of said order in force at that time. That said Phillip M. Smith was duly received into membership and received from the defendant a benefit certificate in words and figures as follows, to-wit:

" 'CERTIFICATE.

" 'The Grand Lodge of the Ancient Order of United Workmen, State of Missouri.   No. 22756—$2,000.

" 'This certificate, issued by the authority of the Supreme Lodge, Ancient Order of United Workmen, witnesseth:

" 'That Brother Phillip M. Smith, a Master Workman degree member of Milton Lodge No. 103, of said order, located at Kirksville, in the State of Missouri, is entitled to all the rights and privileges of membership in the Ancient Order of United Workmen and to participate in the Benficiary Fund of the order, to the amount of two thousand dollars, which sum shall, at his death, be paid to his wife, Mary A. Smith.

" 'This certificate is issued upon the express condition that the said Phillip M. Smith shall in every particular, while a member of said order, comply with all the laws, rules and requirements thereof.

[Seal of Grand Lodge]

In   witness thereof, the Grand Lodge of Missouri, has caused this to be signed by its Grand Master Workman and Recorder and the seal thereof to be attached, this Sixth day of February, One Thousand Eight Hundred and Eighty-Six.

" 'H. L. ROGERS, Grand Master Workman.
" 'Attest: WM. C. RICHARDSON, Recorder.

" 'We, the undersigned, Master Workman and Recorder of ............ Lodge No. ........, do hereby countersign this certificate and attach the seal of this lodge hereto, rendering the same valid and in full force, this ...... day of ..............., ......
(Seal of Subordinate Lodge.)

" 'W. J. SMITH, Master Workman.
" 'Attest:  J. W. TINSMAN, Recorder.'

"7.  That afterwards, to-wit: on or about the 26th day of October, 1902, Mary A. Smith, mentioned in said certificate and designated as beneficiary thereof, died.

"8.  That after the death of said Mary A. Smith, said Phillip M. Smith married plaintiff, Laura S. Smith, and afterwards, to-wit:  On May 17, 1904, said Phillip M. Smith died, leaving no minor child or children by a prior marriage, but leaving as his only heirs his widow, Laura S. Smith, and defendants, one Minnie Fowler, residing at Kirksville, Adair county, Missouri, and one Alma S. Dodson, residing at Springfield, Greene county, Missouri.

"9.  Defendant states that at the time of Phillip M. Smith's death he was a member in good standing in defendant's said order, and was entitled to have paid to his legally designated beneficiaries the sum of two thousand dollars; which said sum defendant is now willing and ready to pay to whomsoever is lawfully entitled to the same, and makes no claim for itself to any part thereof for itself.

"10.  Defendant states that it never issued to said Phillip M. Smith any other benefit certificate, policy or any other document, agreement, contract, undertaking or promise, except the benefit certificate hereinbefore set forth, nor has this defendant ever exercised or claimed to exercise any other powers, or engaged in any other business than that provided for in the statute under

which it was incorporated and those amendatory thereof.

"11. Defendant states that after the death of said Phillip M. Smith, plaintiff, Laura S. Smith, made demand on plaintiff for the said sum of two thousand dollars, claiming that she was entitled to the sum of two thousand dollars, payable because of the membership in the said order, because the disposition of said fund was goverened by the laws of said defendant in force at the time of the death of Phillip M. Smith, and the original beneficiary, said Mary A. Smith, having died in the lifetime of the member, and he having made no other or further disposition thereof, and having left no minor children by a former marriage, the same was payable to her. Said Laura S. Smith brought this present suit against this defendant, and this defendant refers to plaintiff's petition herein as a more definite statement of her said claims.

"12. Defendant states that after the death of said Phillip M. Smith, defendants, Minnie Fowler and Alma S. Dodson, made claim to said benefit and the amount of said certificate, claiming that they were the only heirs of said Phillip M. Smith; and that, under the laws of this defendant order, in force at the time said Phillip M. Smith joined, the said benefit was payable to them. Said defendants further claim that under the contract and agreement entered into between them and their father, said Phillip M. Smith, and the said plaintiff, it was agreed that in consideration of said defendant having paid the assessments on said benefit certificate and said plaintiff having other property, the said benefit was to be paid to them; and they were entitled to the whole thereof. That afterwards said defendants, Minnie Fowler and Alma S. Dodson, brought suit against this defendant in the circuit court of Adair county, towit: on the 19th day of September, 1904, claiming the amount of said benefit certificate; which said suit is

124 App.—13.

founded on the benefit certificate hereinbefore set out, and upon the same instrument of writing upon which plaintiff's said suit is founded, and is brought to recover the same alleged debt claimed by plaintiff in this present action.

"13. This defendant further states that after the death of Phillip M. Smith, defendant J. I. Fowler, as administrator of the estate of said Mary A. Smith, made claim to said benefit and said debt and the amount of benefit certificate, claiming that at the time said Phillip M. Smith became a member of said order, there was no provision in said laws whereby said benefit should be paid to any other person than to the designated beneficiary or her legal representatives; that the legal effect of the said benefit certificate was *to create in the beneficiary therein designated a vested interest which descends to the administrator* on her death, and claiming that said benefit certificate was in reality a policy of life insurance; and said J. I. Fowler as administrator aforesaid, heretofore, to-wit: on the eighteenth day of September, 1904, brought suit against this defendant in the circuit court of Adair county, claiming the amount of said benefit certificate; which said action so, as aforesaid, brought by said Fowler, is founded on the same instrument of writing sued on by plaintiff in this case, and is against this defendant, incorporated as aforesaid, and is for the same debt which is sued for in this action, and is sued for by other defendants, Minnie Fowler and Alma S. Dodson.

"14. This defendant states that it has no means of ascertaining the true facts or who is lawfully entitled to the said sum of two thousand dollars, but the same debt due from this defendant on said benefit certificate to some one on account of the membership of said Phillip M. Smith in said order, is claimed by plaintiff and said defendants, Minnie Fowler and Alma S. Dodson, and J. I. Fowler, as administrator as aforesaid. That this de-

fendant is a mere stakeholder of said fund, and now har-
rassed by three suits which are founded on the same
identical cause and for the same debt and this defendant
is liable because of said suits pending in different courts
to have two judgments rendered against it for the same
debt.

"15. This defendant states that this suit is not
brought out of collusion with plaintiff or either or any
of the said defendants, but in good faith, for the purpose
of being relieved from the responsibility of determining
who is entitled to said fund, and being relieved from the
expense of defending three different suits on the same
cause of action and for the same debt, which debt this
defendant admits is due to some one of said defendants
or plaintiff.

"16. Wherefore, defendant prays that it may be al-
lowed to pay into court the said sum of two thousand
dollars; which said sum this defendant now brings into
court and offers to pay; that upon said payment being
made into court said benefit certificate, which this de-
fendant alleges is in the possession of plaintiff, be
brought into court and cancelled by the clerk thereof;
and that on payment being made into court of said sum
of two thousand dollars, this defendant be discharged
from all liability to said plaintiff and said defendants,
Minnie Fowler, and Alma S. Dodson, and said J. I.
Fowler, as administrator aforesaid, because of said bene-
fit certificate, or on account of the membership of said
Phillip M. Smith in defendants said order; and that
plaintiff, Laura S. Smith, and defendants, Alma S. Dod-
son and Minnie Fowler, and J. I. Fowler, as adminis-
trator aforesaid be perpetually enjoined from in-
stituting, prosecuting or maintaining any action,
either at law or in equity, against this defendant
on account of said benefit certificate or the membership
of said Phillip M. Smith in said order; and that said de-
fendants, Minnie Fowler and Alma S. Dodson, may be

enjoined from further prosecution of their said action against this defendant in said circuit court of Adair county, and said defendant, J. I. Fowler may be enjoined from prosecuting and maintaining his said action against this defendant pending in the circuit court of Adair county.

"17.    Defendant prays that it may be allowed out of said fund so, as aforesaid, paid into court, a reasonable sum for its attorney fees and expenses incurred herein and incurred in defending said suits pending in said Adair county, and this defendant states that the sum of three hundered dollars in such reasonable allowance.

"18.    And this defendant prays for all such other and further relief to which it may be entitled, the premises considered."

To this answer and cross-bill of the Grand Lodge, the appellant administrator filed his separate answer, alleging the following reasons why he should not be required to interplead herein.

"1.    That long before the institution of this action, said Grand Lodge knew that plaintiff and defendants, Alma S. Dobson and Minnie Fowler, were each claiming that it owed to them the amount named in the instrument of writing sued upon in this action, and with that knowledge refused and neglected to pay the same into the court, but demanded that said claimants institute action against it upon said instrument of writing; that it neglected to bring an action of interpleader, and refused to bring such action, but on the contrary demanded that the various claimants sue upon said instrument of writing; that said claimants did so sue as demanded by said Grand Lodge and that costs have been made in each of said actions."

The second and third paragraphs of this answer, first, "denies that said Grand Lodge is a disinterested stakeholder" and in substance, alleges as reasons why it

was not a disinterested stakeholder, that after the insti-
tution of this suit by the plaintiff and after the institu-
tion of the several suits in Adair county, the Grand Lodge
by certain of its officers, attempted to induce the said ad-
ministrator and Alma S. Dodson and Minnie Fowler to
discharge the attorneys then representing them, to enter
their appearance in this action, and to employ the coun-
sel of the Grand Lodge, who had charge of said litigation
for said lodge, and represented to said administrator,
Alma S. Dodson and Minnie Fowler that they had no
valid claim to any portion of said fund which the lodge
was tendering into court, but that if they would intrust
their interests to said counsel, he could, because of his
very superior learning in this particular branch of law,
induce the plaintiff to compromise her claim and pay
them a portion of said moneys.    (Reference to clauses
four and five of the answer are here omitted for the rea-
son that counsel make no point in this court with respect
to the same.)    The remainder of the answer is as fol-
lows:

"6.    Further answering says he has not at any time
claimed, nor does he now claim said Grand Lodge, An-
cient Order of United Workmen ever had or held any
particular sum of money as a fund which belonged to
him as such administrator, but on the contrary, he did,
at the time of the filing of said cross-bill of interplead-
er, and for a long time prior thereto, assert and claim,
and does now assert and claim that said Grand Lodge,
Ancient Order of United Workmen, owes to him, as such
administrator, the sum of $2,021.50, together with inter-
est thereon at the rate of six per cent.    From September
5, 1904, by reason of the instrument of writing issued by
said Grand Lodge to Phillip M. Smith, and mentioned
and described in plaintiff's petition and in said cross-
bill of interpleader.

"7.    That on said fifth day of Setepmber, 1904, he, as
such administrator aforesaid, instituted in the circuit

court of Adair county, Missouri, an action based upon said instrument of writing aforesaid, against said Grand Lodge, Ancient Order of United Workmen, of the State of Missouri, to recover the sum so claimed by him; that the said action so begun by him as aforesaid is still pending and undetermined; that the amount he is now entitled to recover in that action, so begun by him, as aforesaid, in the circuit court of Adair county, Missouri, is the sum of $2,021.50 and the costs of that suit.

"8.     That in said suit said administrator alleges said Grand Lodge is a life insurance company.

"9.     Further answering says that said Grand Lodge, Ancient Order of United Workmen, of the State of Missouri, has not at any time paid into court the said sum of money due upon the instrument of writing issued to Phillip M. Smith by it nor has it the ability now to pay in the amount of money due thereon.

"10.     Further answering admits the death of Phillip M. Smith and Mary A. Smith at the dates alleged.

"11.     Further answering, denies each and every other allegation in said cross-bill of interpleader as aforesaid.     Wherefore he prays he be not required to interplead, and that said cross-bill of interpleader be dismissed."

Upon the coming in of this answer, the Grand Lodge moved and the court sustained its motion to strike out of said answer, all of section one and all of section two and three after the words "Further answering, says that he denies that said Grand Lodge is a disinterested stakeholder herein," and all of section four, five and nine thereof.     (As said before, no complaint is directly levelled against the action of the court in striking out sections four and five of the answer and therefore no further notice will be given thereto.)     The court having stricken these several sections and clauses from the appellant administrator's answer, the Grand Lodge moved for judgment of interpleader on its cross-bill and

the remaining portions of the administrator's answer thereto.

This motion was sustained and the court entered its decree to the effect that it was a proper case for interpleader, sustained the Grand Lodge's bill to that effect, ordered it to pay into the registry of the court $2,000, less $100 attorney fees and certain other costs allowed to it out of said fund in full of its indebtedness on account of such certificate, ordered said certificate to be cancelled, placed in the possession of the clerk until a final determination of the proceedings between the interpleaders, ordered the appellant administrator and Mrs. Dodson and Mrs. Fowler to interplead with the plaintiff in said court for the fund; decreed the injunction against the further prosecution of such suits in Adair county perpetual, and finally discharged the Grand Lodge from further responsibility to any of the parties on account of such indebtedness, and this, too, notwithstanding the administrator claimed $2,021.50 instead of $2,000 due to him. Mrs. Dodson and Mrs. Fowler abided the judgment. The administrator appeals however, from this decree, urging that the court erred in striking out the portions of his answer mentioned and also erred in granting a decree of interpleader upon the pleadings as they remained after such portions were stricken.

NORTONI, J. (after stating the facts).—The first argument advanced for a reversal of the judgment is that the cross-bill of interpleader is without equity insofar as the administrator is concerned, inasmuch as it alleges the Grand Lodge to be a fraternal beneficial association, which if true shows on its face the administrator could have no claim upon the fund. It has been said, and it is no doubt generally true, as a pertinent proposition in interpleader proceedings that the bill must not show a clear right or title in one of its claimants as against the other, for in such case where the right

of one claimant is clear, that is, not in the least doubtful as against the other, it would be the duty of the stakeholder to discharge the obligation by payment or delivery to that claimant about whose rights there could be no doubt. [Sullivan v. Knights of Father Matthew, 73 Mo. App. 45; Funk v. Avery, 84 Mo. App. 494.] Now, the administrator predicates his right upon the proposition that the Grand Lodge is, or was at the time of issuing the certificate, an old line life insurance company and therefore the original designation of his intestate, Mary A. Smith, in 1886, without a subsequent designation of beneficiary by the insured after her death, rendered to the said Mary A. Smith and her estate, which he now represents, under section 7895, R. S. 1899, a vested interest in the fund, etc. The beneficiary in an old line life insurance policy has a vested right in the indemnity fund therein provided for, and so, under the statute referred to, if the certificate involved be what is termed an old line insurance policy, in view of the fact that the deceased insured made no other or further designation of a beneficiary, after the death of his first wife, in accordance with the statute, the indemnity fund would pass to the estate of the first wife which is represented by the appellant; whereas, if the Grand Lodge be a fraternal beneficial association, then the beneficiary, Mary A. Smith, had no vested interest in the fund, her right being only an expectancy, subject to change at any time by the exercise of the power over the same vested in the insured, and under such circumstances, her expectancy ceased at and by virtue of her death prior to that of her husband's notwithstanding the fact that he made no other or further designation therein, and therefore the administrator would have no claim. From this relative statement of the law on the subject, it is obvious that the right of the administrator to have the fund in controversy is ultimately determined by an ascertainment of the character of the Grand Lodge; and it is upon this

theory the argument is based that the allegation of the
bill is to the effect the Grand Lodge is a fraternal asso-
ciation shows conclusively the administrator has no val-
id claim therefor and no equitable right of interpleader
obtains with respect to his assertion of claim. We are
not persuaded, however, that the principle adjudged in
the case *supra* is pertinent to the fact here in judgment,
whatever what might be said of the voluntary filing of
the bill of a complainant against and for an interplead-
ing of the several claimants before suit brought by them
on the claims asserted, with respect to the matter of its
being essential to show that each of said claimants had
at least an apparently doubtful claim. The doctrine
could certainly have no application here where the in-
terpleading is not sought until after the stakeholder is
actually sued on such claims. It must be borne in mind
that this bill of interpleader comes in after three suits
are filed against the stakeholder. Now the entire policy
of the procedure and the most fundamental principles
of justice underlying this department of our jurispru-
dence, seem to indicate that after the stakeholder has
actually been forbidden by one of the claimants to pay
over the fund to another or after suits have actually
been instituted against him by the several claimants for
the same fund, debt, or duty, he is not bound to exercise
any judgment on the matter whatever, as to who is, or
who is not, entitled, and is permitted to discharge him-
self by invoking the aid of the court in his bill. This
must result from the fact that the primary and funda-
mental notion of the doctrine is no more to protect him
from being subject to several judgments than it is to re-
lieve a wholly disinterested stakeholder, acting in good
faith, from being harassed and annoyed by several suits
on account of the same fund to which he makes no claim
and asserts a willingness to pay or deliver it to whom-
soever is the rightful party. This is the principle as we
deduce it. [See Atkinson v. Manks et al., 1 Cow. (N.

Y.) 691-705; Supreme Council, etc., v. Palmer, 107 Mo. App. 157, 80 S. W. 699, 4 Pomeroy's Eq. Juris. (3 Ed.), sec. 1319; Yarborough v. Thompson, 3 Smed. & M. (Miss.) 291.] Inasmuch as the administrator predicates his only right to the fund upon the proposition that the Grand Lodge is an old line life insurance company that would be an issue to be determined between himself and the other claimants who predicate their rights upon the proposition that it was and is a fraternal association.

The doctrine of the remedy of interpleader rests upon the most obvious principles of equity. It is said that it depends upon and requires the existence of the four following elements: "1. The same thing, debt or duty, must be claimed by both or all the parties against whom the relief is demanded; 2. All their adverse titles or claims must be dependent or be derived from a common source; 3. The person asking the relief—the plaintiff usually—must not have nor claim any interest in the subject-matter; 4. He must have incurred no independent liability to either of the claimants; that is, he must stand perfectly indifferent between them in the position merely of a stakeholder." [4 Pomeroy's Eq. Juris. (3 Ed.), sec. 1322; 2 Story, Eq. Juris. (13 Ed.), pp. 136-150; Atkinson v. Manks (N. Y.)—Cow. 691-703; Roselle v. Farmers' Bank, 119 Mo. 84, 24 S. W. 744; 11 Ency. Pl. and Pr., 452-466; Sup. Council v. Palmer, 107 Mo. App. 157.] It is quite clear that the cross-bill states a case when measured by the rules, supra.

It is suggested by appellant, however, there is no equity in the bill for the further reason that from the allegations, the Grand Lodge is a fraternal association, there is then no doubt "in point of fact" in the case of the Grand Lodge to the effect that the administrator has no valid claim; that such doubt can only exist with respect to a question of law and therefore, in accord with former adjudications of this court, there is no such doubt shown as must appear to sustain the bill. Indeed, it

has been intimated, to say the least, that as a prerequisite to the right of interpleader, the debtor or stakeholder must entertain some doubt in "point of fact" as to which of the rival claimants the admitted debt or duty should be discharged. [Sullivan v. Knights, etc., 73 Mo. App. 45; Funk v. Avery, 84 Mo. App. 494.] It is quite well settled, however, that a valid doubt respecting either a question of fact or law, is sufficient in this behalf, for the stakeholder, under such circumstances, is not required at his peril to decide either close questions of fact or nice questions of law. It is sufficient for him that he be disinterested and, in good faith, is in doubt as to which of the claimants is entitled to the fund, whether that doubt arise out of fact or law. Such is the opinion of our Supreme Court on the question and on principle it is eminently sound. [Little v. St. Louis Union Trust Co., 197 Mo. 281-299, 94 S. W. 890. See also Crane v. McDonald, 118 N. Y. 648; Modern Woodmen of the World v. Wood, 100 Mo. App. 655, 75 S. W. 377, 5 Pomeroy, Eq. Juris., sec. 40.] What was said in Sullivan v. Knights, etc., and Funk v. Avery, supra, limiting the right of interpleader to a doubt in "point of fact" should be disapproved. It is therefore the opinion of the court that the amended answer and cross-bill of the Grand Lodge stated a case for interpleader as against the assignments of error heretofore discussed. These assignments are therefore overruled.

2.   We will now notice the complaints of appellant directed against the action of the court in striking out the several sections of his answer. The first section stricken out, by fair construction, set up substantially that prior to the institution of any of the suits, the Grand Lodge had knowledge of the several claims and with this knowledge, not only neglected and refused to file its bill for an interpleading, but on the contrary, *solicited and demanded* that the "various claimants sue it;" that in obedience to such solicitation and demand,

this appellant filed his suit in Adair county and made costs therein which are still unpaid. Now it seems in a court of conscience, where the party seeking equitable relief is required to show that he has done and is willing to do equity on his part before his complaint will be entertained, that the facts pleaded in this section of the answer, if true (and they must be so presumed with the case in its present posture), constitute a sufficient and valid reason why the appellant should not be required to incur the additional expense and inconvenience of interpleading in a St. Louis forum for the same fund for which he has contracted the expense and inconvenience of instituting a suit in Adair county at the express solicitation and demand of the Grand Lodge, unless he be placed *in statu quo* at least. It is the duty of the party seeking interpleader relief to make known his condition as a stakeholder by filing his bill within a reasonable time after being advised of the several claims against him. [11 Ency. Pl. and Pr., 462; Dodds v. Gregory, 61 Miss. 351; Cheever v. Hodgson, 9 Mo. App. 565.] And most certainly if he fails to do so and solicits one of the claimants to institute suit against him therefor, on which solicitation the claimant relies and by which he is induced to and does institute such suit as requested, and thus alters his condition by virtue of the resulting inconvenience and expense attendant upon such matters, he, the stakeholder, ought of right to be and is estopped on the plainest principles of equity from invoking the aid of equity in another and distant forum to bring the same claimant before it to there interplead for the fund, and is likewise estopped at the same time, to restrain by injunction the further prosecution of the suit instituted upon his solicitation, until at least the stakeholder shall have placed such claimant *in statu quo* by compensating him for his expenditure incurred while relying and acting upon such solicitation. We do not regard the case of Orient Ins. Co. v. Reed, 81 Calif. 145,

cited and relied upon by respondent on this question as in point here. The fact of soliciting the claimant to institute a prior suit out of which arises the operation of the principle of estoppel is entirely absent in that case, and that adjudication is therefore not pertinent to the question here in decision. It is said in the briefs of the Grand Lodge that it did not solicit the institution of the suits in Adair county; that it had served notice upon appellant in advance of the several claims and that it would therefore file its bill of interpleader. Of course, if these facts be true, it would influence the case materially. Those facts do not appear on the pleadings nor are they in the record for our consideration. We are therefore of the opinion that the court erred in striking out this section of the answer.

3. All that portion of the section three and four of appellant's answer, other than the allegation that the Grand Lodge was not a disinterested stakeholder was stricken out. The portion stricken set out in substance that after the institution of the several suits, certain officers of the Grand Lodge sought to induce appellant and Mrs. Dodson and Mrs. Fowler to dismiss their counsel and entrust their claims to counsel representing the Grand Lodge, suggesting that they would be unable to recover on their claim and that such counsel would probably be able to induce a compromise with plaintiff whereby a portion of the fund could be had for them. While this state of facts, if true, was an impertinent intermeddling, which no doubt the learned counsel for the Grand Lodge would have repudiated at once if brought to his attention, we are not persuaded, however, that it shows the Grand Lodge was not a disinterested stakeholder in the sense contemplated by the rule as to neutrality. At the most, it shows only an endeavor to effect a situation out of which a compromise between the complainants might result. At any rate, it is alleged to have occurred after the several suits were instituted and

the clear right of interpleader had thereby accrued. See Supreme Counsel v. Palmer, 107 Mo. App. 197, 80 S. W. 699, where this consideration quite correctly influenced the judgment of the court. The question then is, did such conduct forfeit the right theretofore accrued? While we are not inclined to adjudge that no situation can arise by the voluntary act of the stakeholder after the institution of the suit by the various claimants which would perclude or defeat the right of interpleader on principles of equity, we are of the opinion that the acts alleged after suit do not of themselves operate a forfeiture of the right of interpleader theretofore accrued nor constitute a valid reason why the appellant should not be required to interplead. This portion of the answer was theretofore properly stricken out.

4.   The ninth section stricken out was to the effect that the Grand Lodge had not deposited the fund in court and for this reason the appellant should not be required to interplead. This fact, if true, was no reason why the appellant should not interplead, inasmuch as the Grand Lodge was not required to do more than tender the fund in its bill, which it did, until the court had found the case to be one for interpleading and ordered it to make the deposit. The registry of the court was not authorized to receive the fund until the court had sustained the bill and ordered the deposit made, nor was the clerk authorized to receive and receipt for the same until that time. This reason for not being required to interplead was invalid under our practice and premature at the time it was interposed. It was properly stricken out. It is certain the court could not and would not acquit the Grand Lodge of its responsibility until it had first actually paid the fund into the registry; nor would it require an interpleading for the fund until the deposit was made. Those matters would be ordered simultaneously.

5.   We come now to examine the action of the court

in sustaining the motion for judgment on the remaining portion of the pleadings. Section six of the appellant's answer alleges in substance that he had not claimed and did not claim that the Grand Lodge owed to him $2,000, but, on the contrary, averred the filing of his suit on September 5, and that the Grand Lodge owed to him on account of the obligation mentioned in its cross-bill, $2,021.50. This $21.50, the difference, is not explained. It is possibly for accrued interest after demand, resulting from the filing of his suit, and it presented the question of a dispute as to the amount due. The Grand Lodge averred that it owed, and tendered, $2,000 only, the appellant claiming $2,021.50, and for this reason appellant objected to being required to interplead for only a portion of the debt he claimed. This was a valid reason why he should not be so required. Indeed, it is universally true that where there appears to be a question between parties seeking relief by interpleader and the claimant or claimants, as to the amount due, that such question destroys the right and stakeholder cannot maintain his interpleading thereon. The reasons for this rule are obvious. First, the interpleader proceedings will not dispose of the entire controversy between parties, and second, it is not in accord with the principles of equity to require the claimant to separate his claim and bear the burden of enforcing it in two separate proceedings. [Maclennan on Interpleader, 72; Glasner v. Weisberg, 43 Mo. App. 214; Chamberlain v O'Connor, 8 How. Pr. 45; Moore v. Usher, 7 Simmons 383; 23 Cyc. Law and Proc., 6.] The court, in sustaining the bill, decreed that the Grand Lodge be discharged and awarded it its costs and attorney fees upon its payment into court of $2,000, notwithstanding the appellant's claim then presented for $21.50 in excess of that amount. The result of this would necessitate his application in another suit for relief as to the remainder of his alleged debt, and upon such application, he would

no doubt be confronted with the plea of *res adjudicata* as to this residue which he claims. [See Glasner v. Weisberg, supra.] The court erred in giving the decree mentioned in this state of the pleadings. It is not out of place to say here, however, inasmuch as the case will be remanded for further proceedings, that amendments to cover a small discrepancy of this nature have been permitted in like proceedings and thus the right of interpleader rendered therein (Orient Ins. Co. v. Reed, 81 Calif 145), and we are unable to ascertain why such would not be permitted in this case upon its remand, if the Grand Lodge find that it erred in the amount tendered and be so advised to amend.

6. We had hoped to be able to dispose of all of the questions raised by the genius of the very learned counsel for appellant by declaring as a matter of law that their client, the administrator, had no claim whatever to the fund in controversy, and thus affirm the judgment on the broad proposition that the Grand Lodge is a fraternal association, under the authority of the case of Westerman v. Grand Lodge, etc., 196 Mo. 670, 94 S. W. 470, and that he is an interloper, but the allegation in the bill to the effect that the Grand Lodge is a fraternal beneficial association is not admitted by him. On the contrary, it is denied in his answer, and he avers it to be an insurance company. We are therefore precluded from so doing.

We are unable to take judicial notice that it is in fact a fraternal association as alleged in its bill.

The judgment will be reversed and the cause remanded. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.